1 | **JENNIFER L. COON**
California State Bar No. 203913
2 | **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 | San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
4 | E-Mail: jennifer_coon@fd.org

5 | Attorneys for Mr. Hernandez-Rivera

6

7

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | **(HONORABLE M. JAMES LORENZ)**

11 | UNITED STATES OF AMERICA,                )      CASE NO. 08CR0719-L
                                             )
12 |            Plaintiff,                    )      DATE:        April 14, 2008
                                             )      TIME:        2:00 p.m.
13 | v.                                       )
                                             )      STATEMENT OF FACTS AND
14 | RIGOBERTO HERNANDEZ-RIVERA,              )      MEMORANDUM OF POINTS AND
                                             )      AUTHORITIES IN SUPPORT OF MOTIONS
15 |            Defendant.                    )
     _____)

16

17 |                                          **I.**

18 |                                **BACKGROUND**[1]

19 |        On January 24, 2008, Mr. Hernandez-Rivera was arrested.  On March 12, 2008, the government filed

20 | a one-count indictment charging a violation of 8 U.S.C. §§ 1326(a) and (b).  The indictment was returned by

21 | the January 2007 grand jury.

22 |        These motions follow.

23 |                                          **II.**

24 |                  **MOTIONS TO DISMISS THE INDICTMENT**

25 | **A.      Motion to Dismiss the Indictment Because it Fails to Allege All Elements of the Charged Offense**

26 |        The indictment must be dismissed because the government has failed to properly allege all elements

27 | _____

28 |        [1] The following statement of facts and any facts further cited in this motion are based on
discovery provided by the government.  Mr. Hernandez-Rivera does not admit the truth or accuracy
of these facts, and reserves the right to challenge the truth and accuracy of these facts in any
subsequent pleadings or during any further proceedings.

1    of the offense. "Two corollary purposes of an indictment are to ensure that the defendant is being prosecuted

2    on the basis of facts presented to the grand jury and to allow the court to determine the sufficiency of the

3    indictment." United States v. Lane, 765 F.2d 1376, 1380 (9th Cir. 1985). "To serve each of these functions,

4    the indictment must allege the elements of the offense charged and the facts which inform the defendant of

5    the specific offense with which he is charged." United States v. Pernillo-Fuentes, 252 F.3d 1030, 1032 (9th

6    Cir. 2001) (quoting Lane, 765 F.2d at 1380). Accordingly, "[a]n indictment's failure to recite an essential

7    element of the charged offense is not a minor or technical flaw . . . but a fatal flaw." United States v. Du Bo,

8    186 F.3d 1177, 1179 (9th Cir. 1999).

9       Here, the indictment must be dismissed because it fails to allege both the dates of a previous felony

10    conviction and of a previous removal from the United States subsequent to that conviction. The indictment

11    charges a violation of 8 U.S.C. §§ 1326(a) and (b). The statutory maximum sentence for violation of 8 U.S.C.

12    § 1326(a) is two years of imprisonment. Pursuant to 8 U.S.C. § 1326(b), however, a higher statutory

13    maximum may apply if the alien was removed subsequent to certain predicate crimes. In United States v.

14    Salazar-Lopez, 506 F.3d 748, 751-52 (9th Cir. 2007), the Ninth Circuit held that an allegation in the

15    indictment that the defendant "had been removed on a specific, post-conviction date" is "required" in order

16    to trigger the enhanced penalties under 8 U.S.C. § 1326(b). Here, although the indictment alleges a violation

17    of 8 U.S.C. § 1326(b), it fails to allege either a specific removal date or the temporal relationship between

18    that removal and a prior conviction. Rather, the indictment merely alleges that Mr. Hernandez-Rivera was

19    removed from the United States subsequent to one unassociated date, July 7, 2005. Because the indictment

20    fails to allege all of the necessary elements of the charged offense, § 1326(b), it must be dismissed.

21    **B.**     **Motion to Dismiss The Indictment Because it Violates Mr. Hernandez-Rivera's Right to**

22         **Presentment.**

23       Mr. Hernandez-Rivera has a Fifth Amendment right to have a grand jury pass upon those facts

24    necessary to convict him at trial. In the indictment, the government included the language: "It is further

25    alleged that defendant RIGOBERTO HERNANDEZ-RIVERA was removed from the United States

26    subsequent to July 7, 2005."[2] The indictment in this case violates Mr. Hernandez-Rivera's right to

27

28        [2] Presumably, the government added this language in an attempt to comply with the Ninth Circuit's decision in United States v. Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006). In

1  presentment in two ways.  First, the language added by the government does not ensure that the grand jury

2  actually found probable cause that Mr. Hernandez-Rivera was deported after July 7, 2005, as opposed to

3  simply being physically removed from the United States.  Second, that the grand jury found probable cause

4  to believe that Mr. Hernandez-Rivera was removed "subsequent to July 7, 2005" does not address the

5  possibility that the government may at trial rely on a deportation that was never presented to, or considered

6  by, the grand jury.

7      The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise

8  infamous crime, unless on a presentment or indictment of a Grand Jury."  U.S. Const. Amend. V.  The

9  Sixth Amendment provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be

10  informed of the nature and cause of the accusation . . .."  U.S. Const. Amend. VI.  Thus, a defendant has a

11  constitutional right to have the charges against him presented to a grand jury and to be informed of the

12  grand jury's findings via indictment.  See Russell v. United States, 369 U.S. 749, 763 (1962) (An indictment

13  must "contain[] the elements of the offense intended to be charged, and sufficiently apprise[] the defendant

14  of what he must be prepared to meet.").

15      To be sufficient, an indictment must allege every element of the charged offense.  See United States

16  v. Morrison, 536 F.2d 286, 287 (9th Cir. 1976) (citing United States v. Debrow, 346 U.S. 374 (1953)).

17  Indeed, in order to be sufficient, an indictment must include implied elements not present in the statutory

18  language.  See Du Bo, 186 F.3d at 1179.  "If an element is necessary to convict, it is also necessary to indict,

19  because elements of a crime do not change as criminal proceedings progress."  United States v. Hill, 279 F.3d

20  731, 741 (9th Cir. 2002).  An indictment's failure to "recite an essential element of the charged offense is not

21  a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment."  Du Bo, 186 F.3d at 1179.

22      In the indictment, the government here has added the language:  "It is further alleged that defendant

23  RIGOBERTO HERNANDEZ-RIVERA was removed from the United States subsequent to July 7, 2005."

24  There is no indication from this allegation that the grand jury was charged with the legal meaning of the word

25

26  _____

27  Covian-Sandoval, the Ninth Circuit held that it is an Apprendi violation for a court to increase a
    person's statutory maximum under 8 U.S.C. § 1326(b) via a court-finding that a person had been

28  removed from the United States following a conviction.  This language, however, does not cure the
    problems with this indictment.  Should sentencing become necessary, Mr. Hernandez-Rivera will
    file further briefing on this issue.

1  "removal" applicable in this context, as opposed to being simply removed from the United States in a

2  colloquial sense.  It is clear from <u>Covian-Sandoval</u> that in order to trigger the enhanced statutory maximum

3  contained in section 1326(b), the government must prove that a person was removed—as that term is used

4  in the immigration context—after having suffered a conviction.  462 F.3d at 1097-1098 (noting as part of its

5  analysis that immigration proceedings have fewer procedural protections that criminal proceedings).  A

6  deportation has the following elements: "(1) that a deportation proceeding occurred as to [the] defendant and

7  as a result, [(2)] a warrant of deportation was issued and [(3)] executed by the removal of the defendant from

8  the United States."  <u>See</u> <u>United States v. Castillo-Basa</u>, 483 F.3d 890 (9th Cir. 2007) (citing, without

9  contesting, the elements of a deportation provided by the district court.)  As this is the type of removal the

10  government must prove before a petit jury, it is necessary that the government allege such a removal before

11  the grand jury.  As returned, however, there is no assurance from the face of the indictment that the grand jury

12  in this case was charged with the <u>type</u> of removal necessary to increase a person's statutory maximum under

13  section 1326(b).

14       As such, there is no fair assurance that the grand jury will have passed upon those facts necessary to

15  convict Mr. Hernandez-Rivera.  Additionally, as charged, there is no fair assurance that the indictment will

16  contain those allegations the government will attempt to prove at trial.  If the government alleged before the

17  grand jury that Mr. Hernandez-Rivera was removed (in a colloquial sense), but offers proof at trial that

18  Mr. Hernandez-Rivera was removed (in an immigration sense), there will be a constructive amendment of

19  the indictment at trial.  <u>See</u> <u>Stirone v. United States</u>, 361 U.S. 212, 217-19 (1960).  Either scenario represents

20  a violation of Mr. Hernandez-Rivera's right to presentment.  <u>Stirone</u>, 361 U.S. at 218-19.

21       A second problem with the indictment is that there is no indication which (if any) deportation the

22  government presented to the grand jury.  In most cases, the government will have a choice of deportations

23  to present to the grand jury to support an allegation that a person had been deported after a specific date.

24  According to information provided by the government, although not conceded by the defendant, Mr.

25  Hernandez-Rivera has been subjected to removal proceedings on more than one occasion.  This renders it a

26  very real possibility that the government alleged one deportation to the grand jury to sustain its allegation that

27  Mr. Hernandez-Rivera was removed from the United States, but will attempt to prove at trial a wholly

28  different deportation to sustain its trial proof.  If this were to turn out to be the case, Mr. Hernandez-Rivera's

1  right to have the grand jury pass on all facts necessary to convict him would be violated.  See Du Bo, 186

2  F.3d 1179.

3  **C.     Motion to Dismiss the Indictment Due to Misinstruction of the Grand Jury.**

4       The indictment in the instant case was returned by the January 2007 grand jury.  That grand jury was

5  instructed on January 11, 2007.  The instructions to the impaneled grand jury deviate from the instructions

6  at issue in the major Ninth Circuit cases challenging a form grand jury instruction previously given in this

7  district in several ways.[3]  First, the grand jury was improperly instructed that their singular duty is to

8  determine whether or not probable cause exists and that they have no right to decline to indict when the

9  probable cause standard is satisfied.  Second, the grand jury was improperly instructed of a non-existent

10  prosecutorial duty to present exculpatory evidence.  These instructions were compounded by the erroneous

11  instructions and comments to prospective grand jurors during *voir dire* of the grand jury panel, which

12  immediately preceded the instructions.  Therefore, the indictment should be dismissed.

13  **D.     Motion to Dismiss the Indictment Because the Charging Statute is Unconstitutional**

14       The Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), renders 8 U.S.C.

15  § 1326 unconstitutional.  Although this argument is foreclosed by current Ninth Circuit precedent, see United

16  States v. Covian-Sandoval, 462 F.2d 1090, 1096-97 (9th Cir. 2006), it is presented for purposes of further

17  appellate review.

18       In Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Supreme Court held that in a § 1326

19  prosecution, the fact of a prior conviction need not be alleged in the indictment to increase a defendant's

20  maximum sentence.  Subsequently, however, in Apprendi, the Supreme Court held that any fact that increases

21  the statutory maximum sentence must be pled in the indictment, submitted to a jury, and proved beyond a

22  reasonable doubt.  See 530 U.S. at 476.  Section 1326 sets forth a scheme in which certain facts – prior

23  convictions – may drastically increase the applicable statutory maximum without being set forth in the

24  indictment or proven at trial.  According to the explicit mandate of Apprendi, this violates the Fifth and Sixth

25  _____

26       [3] See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006); United States v.
    Navarro-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005) (Navarro-

27  Vargas II); United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004)(Navarro-Vargas I);
    United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002) (per curiam).  If the Court or the

28  government request further briefing on this issue, or the transcript from the grand jury proceedings,
    then it will be provided forthwith.

1  Amendments.  To the extent that Almendarez-Torres holds that section 1326(b) was intended by Congress

2  to create sentencing enhancements for a judge to determine rather than elements of separate offenses, section

3  1326 is unconstitutional under Apprendi.

### III.

### MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT

6       The above arguments to dismiss the indictment based on the government's failure to comply with

7  Mr. Hernandez-Rivera's Fifth and Sixth Amendment rights is premised on Covian-Sandoval having read into

8  section 1326 an additional element—a deportation that occurred at a particular time—that the government

9  must plead to the grand jury and prove to a jury.  To the extent the government argues that Covian-Sandoval

10 did not create an additional element, the indictment contains surplusage.  In other words, if the government

11 argues that the timing of a person's deportation is not a element of section 1326, but rather a sentencing factor

12 under subsection (b) of section 1326, the indictment alleges a fact—the timing of a person's deportation—the

13 Supreme Court has clearly held to be decided by a judge.

14      The Ninth Circuit has "repeatedly held that language [in an indictment] that describes elements

15 beyond what is required under statute is surplusage and need not be proved at trial."  Bargas v. Burns,

16 179 F.3d 1207, 1216 n. 6 (9th Cir. 1999).  Surplusage in an indictment is subject to being struck at the request

17 of the defendant.  United States v. Fernandez, 388 F.3d 1199, 1220-21 (9th Cir. 2004).  In this case, if the

18 government argues that the date of a person's deportation is not a required element of section 1326, the

19 indictment contains language beyond that which is necessary to convict Mr. Hernandez-Rivera of violating

20 section 1326.  If the date of a person's deportation is not an element of section 1326, then the language in the

21 indictment—"It is further alleged that defendant RIGOBERTO HERNANDEZ-RIVERA was removed from

22 the United States subsequent to July 7, 2005"— is surplusage.  So too is the government's allegation in the

23 indictment that Mr. Hernandez-Rivera violated section 1326, subsection (b).

24      At one time, the Ninth Circuit considered subsection (b) of section 1326 to be a separate offense from

25 subsection (a).  See United States v. Corona-Sanchez, 291 F.3d 1201, 1203 (9th Cir. 2002) (en banc).  This

26 changed, however, following the Supreme Court's decision in Almendarez-Torres v. United States,

27 523 U.S. 224 (1998).  See Corona-Sanchez, 291 F.3d at 1203.  In Almendarez-Torres, the Supreme Court

28 decided that subsection (b) of section 1326 described a sentencing provision, to be determined by a judge,

1  rather than a substantive offense. See id. Following Almendarez-Torres, the Ninth Circuit rethought the way

2  in which subsection (b) should be viewed, to the extent that indictments and judgements that reflect a

3  violation of both subsection (a) and subsection (b) of section 1326 should have the reference to subsection (b)

4  struck to "unambiguously reflect that the defendant was convicted of only one punishable offense

5  pursuant . . .." Id.

6       Although an allegation of a particular date of deportation would likely be an appropriate response on

7  the government's part to the holding of Covian-Sandoval, the government here has chosen to include in the

8  indictment an allegation that goes solely towards an allegation under subsection (b) of section 1326. Indeed,

9  the government has chosen to actually allege a violation of subsection (b) of section 1326 in the indictment.

10  As Almendarez-Torres makes clear, however, Congress clearly intended findings under subsection (b) of

11  section 1326 to be made by a judge, rather than a jury. Almendarez-Torres, 523 U.S. at 235 ("we believe that

12  Congress intended to set forth a sentencing factor in subsection (b)(2) and not a separate criminal offense).

13       Although the Ninth Circuit is free to overrule its own precedent regarding whether Congress intended

14  a statutory provision to be decided by a judge, rather than a jury, see, e.g., United States v. Buckland,

15  289 F.3d 558, 564-68 (9th Cir. 2002) (en banc) (discussing enhanced penalties under 21 U.S.C. § 841), it has

16  not seen fit to overrule the Supreme Court's decision in Almendarez-Torres. See, e.g., United States v.

17  Weiland, 420 F.3d 1062, 1079 n. 16 (9th Cir. 2005). For these reasons, to the degree the government argues

18  that Covian-Sandoval did not create an additional element of section 1326, the government has pled in the

19  indictment an allegation that Congress intended to be decided by judge, rather than a jury.[4]  Therefore,

20  pursuant to Federal Rule of Criminal Procedure 7(d), Mr. Hernandez-Rivera moves to strike this surplusage

21  from the indictment.

22  //

23  //

24

25       [4] The holdings in Covian-Sandoval and Almendarez-Torres also render subsection (b) of

26  section 1326 unconstitutional.  In Covian-Sandoval, the Ninth Circuit held that a jury must
    determine the timing of a person's deportation to trigger subsection (b)'s enhanced statutory

27  maximum. Covian-Sandoval, 462 F.3d 1097-1098. In Almendarez-Torres, however, the Supreme
    Court held that Congress intended subsection (b) to be a sentencing provision to be determined by

28  a judge. Almendarez-Torres, 523 U.S. at 235. It is thus clear that subsection (b), as written and
    construed by the Supreme Court, violates Apprendi.

08CR0719-L

# IV.

## MOTION TO PRODUCE GRAND JURY TRANSCRIPTS

Mr. Hernandez-Rivera hereby moves this Court to compel the government to produce all grand jury transcripts in this case. See U.S. CONST. AMENDS V & VI[5]. Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) allows disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Given the arguments raised above, it is clear that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P 6(e)(3)(E)(ii). Mr. Hernandez-Rivera requests the Court "authorize disclosure" of the grand jury transcript to allow him to adequately prepare for trial and to perfect his appellate record. See id.

# V.

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

Mr. Hernandez-Rivera moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

(1)    The Defendant's Statements. The government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the government intends to offer in evidence at trial -- either in its case-in-chief or in rebuttal; see id.,

---

[5] The Supreme Court has found that "[t]he grand jury is an integral part of our constitutional heritage which was brought to this country with the common law. The Framers, most of them trained in the English law and traditions, accepted the grand jury as a basic guarantee of individual liberty . . . the grand jury continues to function as a barrier to reckless or unfounded charges. 'Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice.' Costello v. United States, 350 U.S. 359, 362 (1956). Its historic office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance. " United States v. Manduano, 425 U.S. 564, 571 (1976). In order to ensure that the criminally accused are safeguarded from reckless and unfounded charges, judges must take their duty to provide guidance seriously and not simply pay lip service to the assurances of the government. It is curious why the government, in this district in particular, fights so hard to keep grand jury proceedings sealed. Interestingly, in many cases, the "witness" who "testifies" before the grand jury is a border patrol agent who neither participated in the arrest or the investigation. He is only called to read a report which has been prepared by others. Such a practice does not allow for the considered judgment of grand jurors. Thus, the release of transcripts is appropriate.

1  any response by the defendant to interrogation; the substance of any oral statements which the government

2  intends to introduce at trial and any written summaries of the defendant's oral statements contained in the

3  handwritten notes of the government agent; any response to any <u>Miranda</u> warnings which may have been

4  given to the defendant; as well as any other statements by the defendant.  Fed. R. Crim. P. 16(a)(1)(A)[6].  The

5  Advisory Committee Notes and the 1991 Amendments to Rule 16 make clear that the Government must

6  reveal <u>all</u> the defendant's statements, whether oral or written, regardless of whether the government intends

7  to make any use of those statements.  Federal Rule of Criminal Procedure 16 is designed "to protect the

8  defendant's rights to a fair trial."  <u>United States v. Rodriguez</u>, 799 F.2d 649 (11th Cir. 1986); <u>see also</u> <u>United</u>

9  <u>States v. Noe</u>, 821 F.2d 604, 607 (11th Cir. 1987) (reversing conviction for failure to provide statements

10  offered in rebuttal -- government's failure to disclose statements made by the defendant is a serious detriment

11  to preparing trial and defending against criminal charges).

12       (2)    <u>Arrest Reports and Notes</u>.  The defendant also specifically requests that the government turn

13  over all arrest reports, notes and TECS records not already produced that relate to the circumstances

14  surrounding his arrest or any questioning.  This request includes, but is not limited to, any rough notes,

15  records, reports, transcripts, referral slips, or other documents in which statements of the defendant or any

16  other discoverable material is contained.  Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A)

17  and <u>Brady v. Maryland</u>.  The government must produce arrest reports, investigators' notes, memos from

18  arresting officers, sworn statements, and prosecution reports pertaining to the defendant.  <u>See</u> Fed. R. Crim.

19  P. 16(a)(1)(B) and (C), 26.2 and 12(I); <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976) (original

20  notes with suspect or witness must be preserved); <u>see also</u> <u>United States v. Anderson</u>, 813 F.2d 1450, 1458

21  (9th Cir. 1987) (reaffirming <u>Harris</u>' holding).

22       (3)    <u>Brady Material</u>.  The defendant requests all documents, statements, agents' reports, and

23  tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the

24  government's case.  <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995).  Under <u>Brady</u>, <u>Kyles</u> and their progeny,

25  impeachment, as well as exculpatory evidence, falls within the definition of evidence favorable to the

26

27

28

-------

[6] Of course, any of Mr. Hernandez-Rivera's statements, which are exculpatory, must be produced, as well.  <u>See</u> <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

1    accused.  See also United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

2    This includes information obtained from other investigations which exculpates Mr. Hernandez-Rivera.

3         (4)    Any Information That May Result in a Lower Sentence Under The Guidelines.  The

4    government must also produce this information under Brady v. Maryland.  This request includes any

5    cooperation or attempted cooperation by the defendant, as well as any information, including that obtained

6    from other investigations or debriefings, that could affect any base offense level or specific offense

7    characteristic under Chapter Two of the Guidelines.  The defendant also requests any information relevant

8    to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant

9    to any other application of the Guidelines.

10         (5)    The Defendant's Prior Record.  The defendant requests disclosure of his prior record.

11    Fed. R. Crim. P. 16(a)(1)(B).

12         (6)    Any Proposed 404(b) Evidence.  The government must produce evidence of prior similar acts

13    under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609.  In addition, "upon request of the

14    accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of

15    any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial and the purpose for

16    which introduction is sought.  This applies not only to evidence which the government may seek to introduce

17    in its case-in-chief, but also to evidence which the government may use as rebuttal.  See United States v.

18    Vega, 188 F.3d 1150 (9th Cir. 1999).  The defendant is entitled to "reasonable notice" so as to "reduce

19    surprise," preclude "trial by ambush" and prevent the "possibility of prejudice."  Id.; United States v. Perez-

20    Tosta, 36 F.3d 1552, 1560-61 (11th Cir. 1994).  Mr. Hernandez-Rivera requests such reasonable notice at least

21    two weeks before trial so as to adequately investigate and prepare for trial.

22         (7)    Evidence Seized.  The defendant requests production of evidence seized as a result of any

23    search, either warrantless or with a warrant.  Fed. R. Crim. P. 16(a)(1)(C).

24         (8)    Request for Preservation of Evidence.  The defendant specifically requests the preservation

25    of any and all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody,

26    or care of the government and which relates to the arrest or the events leading to the arrest in this case.  This

27    request includes, but is not limited to, the results of any fingerprint analysis, the defendant's personal effects,

28    and any evidence seized from the defendant or any third party in relation to this case.

(9)    <u>Henthorn Material</u>.  Mr. Hernandez-Rivera requests that the Assistant United States Attorney assigned to this case oversee a review of all personnel files of each agent involved in the present case for impeachment material.  <u>Kyles</u>, 514 U.S. at 419; <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991); <u>United States v. Lacy</u>, 896 F. Supp. 982 (N.D. Ca. 1995).  At a minimum, the prosecutor has the obligation to inquire of his agents in order to ascertain whether or not evidence relevant to veracity or other impeachment exists.

(10)    <u>Tangible Objects</u>.  The defendant requests the opportunity to inspect and copy, as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the defendant.  Fed. R. Crim. P. 16(a)(1)(C).  Specifically, to the extent they were not already produced, the defendant requests copies of all photographs in the government's possession, including, but not limited to, the defendant and any other photos taken in connection with this case.

(11)    <u>Expert Witnesses</u>.  The defendant requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(E).  The defense requests that notice of expert testimony be provided at a minimum of two weeks prior to trial so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions and credentials of the government's expert.  The defense also requests a hearing in advance of trial to determine the admissibility of qualifications of any expert.  <u>See</u> <u>Kumho v. Carmichael Tire Co.</u> 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings . . ..").

(12)    <u>Evidence of Bias or Motive to Lie</u>.  The defendant requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony.

(13)    <u>Impeachment Evidence</u>.   The defendant requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any

1   witness has made a statement favorable to the defendant.  See Fed. R. Evid. 608, 609 and 613; Brady v.

2   Maryland.

3         (14)    Evidence of Criminal Investigation of Any Government Witness.  The defendant requests any

4   evidence that any prospective witness is under investigation by federal, state or local authorities for any

5   criminal conduct.

6         (15)    Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling.  The

7   defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show

8   that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and

9   any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an

10   alcoholic.

11         (16)    Jencks Act Material.  The defendant requests production in advance of trial of all material,

12   including any tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500;

13   Fed. R. Crim. P. 26.2.  Advance production will avoid the possibility of delay at the request of the defendant

14   to investigate the Jencks material.  A verbal acknowledgment that "rough" notes constitute an accurate

15   account of the witness' interview is sufficient for the report or notes to qualify as a statement under section

16   3500(e)(1).  Campbell v. United States, 373 U.S. 487, 490-92 (1963); see also United States v. Boshell, 952

17   F.2d 1101 (9th Cir. 1991) (holding that, where an agent goes over interview notes with subject, interview notes

18   are subject to Jencks Act).

19         (17)    Giglio Information.  Pursuant to Giglio v. United States, 405 U.S. 150 (1972), the defendant

20   requests all statements and/or promises, express or implied, made to any government witnesses, in exchange

21   for their testimony in this case, and all other information which could arguably be used for the impeachment

22   of any government witnesses.

23         (18)    Agreements Between the Government and Witnesses.  In this case, the defendant requests

24   identification of any cooperating witnesses who have committed crimes, but were not charged, so that they

25   may testify for the government in this case.  The defendant also requests discovery regarding any express or

26   implicit promise; understanding; offer of immunity; past, present, or future compensation; or any other kind

27   of agreement or understanding, including any implicit understanding relating to criminal or civil income tax,

28   forfeiture or fine liability between any prospective government witness and the government (federal, state

1  and/or local).  This request also includes any discussion with a potential witness about, or advice concerning,

2  any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not

3  followed.

4         Pursuant to United States v. Sudikoff, 36 F.Supp.2d 1196 (C.D. Cal. 1999), the defense requests all

5  statements made, either personally or through counsel, at any time, which relate to the witnesses' statements

6  regarding this case, any promises -- implied or express -- regarding punishment/prosecution or detention of

7  these witnesses, any agreement sought, bargained for or requested, on the part of the witness at any time.

8       (19)   Informants and Cooperating Witnesses.  To the extent that there was any informant, or any

9  other tip leading to a TECS hit in this case, the defendant requests disclosure of the names and addresses of

10  all informants or cooperating witnesses used, or to be used, in this case, and in particular, disclosure of any

11  informant who was a percipient witness in this case or otherwise participated in the crime charged against

12  Mr. Hernandez-Rivera.  The government must disclose the informant's identity and location, as well as the

13  existence of any other percipient witness unknown or unknowable to the defense.  Roviaro v. United States,

14  353 U.S. 53, 61-62 (1957).  The government must disclose any information derived from informants which

15  exculpates or tends to exculpate the defendant.

16       (20)   Bias by Informants or Cooperating Witnesses.  The defendant requests disclosure of any

17  information indicating bias on the part of any informant or cooperating witness.  Giglio v. United States.

18  Such information would include what, if any, inducements, favors, payments or threats were made to the

19  witness to secure cooperation with the authorities.

20       (21)   Inspection and Copying of A-File.  Mr. Hernandez-Rivera requests that this Court order the

21  government to make all A-Files relevant to Mr. Hernandez-Rivera available for inspection and copying.

22       (22)   Residual Request.  Mr. Hernandez-Rivera intends, by this discovery motion, to invoke his

23  rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the

24  Constitution and laws of the United States.  Mr. Hernandez-Rivera requests that the government provide his

25  attorney with the above-requested material sufficiently in advance of trial to avoid unnecessary delay prior

26  to cross-examination.

27  //

28  //

08CR0719-L

1  //

2  **VI.**

3  **MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

4      Mr. Hernandez-Rivera and defense counsel have received limited discovery in this case. Specifically,

5  after viewing the A-file, Mr. Hernandez-Rivera may file a motion attacking the validity of his alleged

6  deportation. Additionally, as new information surfaces due to the government providing discovery in

7  response to these motions, or an order of this Court, the defense may find it necessary to file further motions,

8  or to supplement existing motions with additional facts. The denial of this request will result in a violation,

9  at a minimum, of Mr. Hernandez-Rivera's Fifth and Sixth Amendment rights. Therefore, defense counsel

10  requests the opportunity to file further motions based upon information gained from discovery.

11  **VII.**

12  **CONCLUSION**

13      For the foregoing reasons, Mr. Hernandez-Rivera respectfully requests that the Court grant the above

14  motions.

15                                Respectfully submitted,

16

17  DATED:      April 1, 2008                /s/ *Jennifer L. Coon*

                                              **JENNIFER L. COON**

18                                              Federal Defenders of San Diego, Inc.

                                            Attorneys for Mr. Hernandez-Rivera

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2       Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of

3  information and belief, and that a copy of the foregoing document has been caused to be delivered this day

4  upon:

5       Courtesy Copy Court

6       Assistant United States Attorney via ECF

7  Dated: April 1, 2008                                    _____/s/ Jennifer L. Coon_____
                                                           JENNIFER L. COON
8                                                          Federal Defenders of San Diego, Inc.
                                                           225 Broadway, Suite 900
9                                                          San Diego, CA 92101-5030
                                                           (619) 234-8467  (tel)
10                                                         (619) 687-2666  (fax)
                                                           e-mail: Jennifer_Coon@fd.org
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28