# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>v.<br><br>DONALD BARTON DESHOTELS (1),<br>KENNETH ASHLEY GRANT (2),<br><br>                    Defendant. | CASE NO. 07cr1430 JAH<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**<br>[Doc. No. 17] |

Defendant Donald Deshotels has filed a Motion to Dismiss the Indictment Due to Improper Grand Jury Instructions. For the reasons discussed below, Defendant's motion is **DENIED**.

## I. BACKGROUND

On June 5, 2007, a federal grand jury empaneled in this district on January 11, 2007 returned a six-count Indictment charging Defendant with conspiracy to transport illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), transportation of illegal aliens, in violation of 8 U.S.C. § 1324(v)(II), and aiding and abetting.

## II. DISCUSSION

### A. Instructions Re: Role of Grand Jury

Defendant argues that Judge Burns erred in instructing the grand jurors that their sole duty is to determine whether or not probable cause exists, and that they have no right to decline to indict when the probable cause standard is satisfied. Looking at the instructions as a whole, the Court disagrees.

Judge Burns made it clear that the jurors were not to refuse to indict in the face of

probable cause *on the ground that they disagreed with Congress's decision to criminalize certain activity*. Judge Burns did not err in doing so. In United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) ("Navarro-Vargas II"), the Ninth Circuit upheld the model grand jury instruction that states: "You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you." The majority opinion observed that the instruction was not contrary to any long-standing historical practice surrounding the grand jury and noted that shortly after the adoption of the Bill of Rights, federal judges charged grand juries with a duty to submit to the law and to strictly enforce it. Id. at 1193,1202-03. "We cannot say that the grand jury's power to judge the wisdom of the laws is so firmly established that the district court must either instruct the jury on its power to nullify the laws or remain silent." Id. at 1204.

A prohibition against judging the wisdom of the criminal laws enacted by Congress amounts to the same thing as a prohibition against refusing to indict based on disagreement with the laws. It is true that Judge Burns used stronger language that, viewed in isolation, could be misconstrued as requiring the return of an indictment in *all* cases where probable cause can be found. Particularly troubling is the following statement made to the real estate agent: "Your prerogative instead is to act like a judge and to say, 'All right. This is what I've got to deal with objectively. Does it seem to me that a crime was committed? Yes. Does it seem to me that this person's involved? It does.' *And then your obligation*, if you find those things to be true, *would be to vote in favor of the case going forward*." App. 1 to Gov't Response at 27. However, viewed in context, Judge Burns was not mandating the issuance of an indictment in *all* cases where probable cause is found; he was explaining that disagreement with the laws should not be an obstacle to the issuance of an indictment.[1]

---

[1] The Supreme Court has recognized that a grand jury is not required to indict in every case where probable cause exists. In Vasquez v. Hillery, 474 U.S. 254, 263 (1986), the Supreme Court explained: "The grand jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not. In the

Furthermore, the word "obligation" is not materially different than the word "should." In Navarro-Vargas II, the majority opinion held that the model instruction that the jurors "should" indict if they find probable cause does not violate the grand jury's independence. The majority explained, "As a matter of pure semantics, it does not 'eliminate discretion on the part of the grand jurors,' leaving room for the grand jury to dismiss even if it finds probable cause." Navarro-Vargas II, 408 F.3d at 1205 (quoting United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002)). The dissenting opinion notes that the word "should" is used "to express a duty [or] *obligation*." Id. at 1121 (quoting The Oxford American Diction And Language Guide 931 (1999)) (emphasis added).[2]

Defendant also argues that Judge Burns improperly forbade the grand jury from considering the potential punishment for crimes when deciding whether or not to indict. Defendant relies on the following statement:

> Well, those things – the consequences of your determination shouldn't concern you in the sense that penalties or punishment, things like that – we tell trial jurors, of course, that they cannot consider the punishment or the consequence that Congress has set for these things. *We'd ask you to also abide by that.* We want you to make a business-like decision and look at the facts and make a determination of whether there was a probable cause.

App. 1 to Gov't Response at 24-25. (Emphasis added.) Although Judge Burns stated that trial jurors *cannot* consider punishment, he did not impose such a restriction on the grand jurors. Instead, Judge Burns *requested* that the grand jurors follow the same principle. Similarly, during the formal charge, Judge Burns stated, "[y]ou *shouldn't* be concerned with punishment that attaches to the charge." App. A to Def's Mot. at 9. (Emphasis added.)

In United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006), the Ninth

---

hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense - all on the basis of the same facts. Moreover, '[t]he grand jury is not bound to indict in every case where a conviction can be obtained.' United States v. Ciambrone, 601 F.2d 616, 629 (2d Cir. 1979) (Friendly, J., dissenting)."

[2] Defendant concedes that at other times Judge Burns instructed that upon a finding of probable cause, the case "should" go forward. App. 1 to Gov't Response at 17; App. A to Def's Mot. at 4, 23.

1  Circuit upheld a jury instruction that stated: "[W]hen deciding whether or not to indict,
2  you *should not* be concerned about punishment in the event of conviction; judges alone
3  determine punishment." (Emphasis added.)  Consistent with the reasoning in Marcucci
4  and Navarro-Vargas II, the Ninth Circuit held that the instruction did not place an
5  absolute bar on considering punishment and was therefore constitutional.  The
6  instructions given by Judge Burns regarding the consideration of punishment were
7  substantially the same as the instruction in Cortez-Rivera.

8        Judge Burns did not pronounce a general prohibition against jurors exercising their
9  discretion to refuse to return an indictment in the face of probable cause.  In any case,
10 "history demonstrates that grand juries do not derive their independence from a judge's
11 instruction.  Instead they derive their independence from an unreviewable power to decide
12 whether to indict or not." Navarro-Vargas II, 408 F.3d at 1204.

13       Even though the jurors were not explicitly instructed that they could use their
14 discretion to refuse to return an indictment, they retained that power by virtue of the
15 secrecy surrounding their deliberations and the unreviewability of their decisions. Nothing
16 that Judge Burns said or did impinged on the jurors' independence in this regard.

17       Defendant counters that the dismissal of the two potential jurors undermined the
18 grand jury's independence from the very start. According to Defendant, when Judge Burns
19 dismissed the jurors, the message was clear that they were to indict in every case where
20 there was probable cause or they would be excused.  Defendant contends that the
21 remaining grand jurors could not have understood Judge Burns' actions in any other way.
22 The Court disagrees.

23       Upon reading the voir dire transcript, it is apparent that the jurors were excused
24 because they were biased against the government with respect to a whole category of
25 criminal laws, not simply because they were independent-minded and might refuse to
26 return an indictment in a case where probable cause exists. Judge Burns explained to the
27 clinical social worker, "We're all products of our experience.  We're not going to try to
28 disabuse you of experiences or judgments that you have.  What we ask is that you not

allow those to control invariably the outcome of the cases coming in front of you; that you look at the cases fresh, you evaluate the circumstances, listen to the witness testimony, and then make an independent judgment." App. 1 to Gov't Response at 15.  Judge Burns excused the social worker after he admitted that it would be difficult for him to return an indictment in drug or immigration cases.

Similarly, the real estate agent expressed that he thought drugs should be legal and that people using drugs should not be sent to jail. App. 1 to Gov't Response at 25-26. The real estate agent said that he was not comfortable with indicting in drug cases. Although he did not say that he would refuse to indict in all cases involving drugs, he admitted that because of his beliefs, there was a chance that he would refuse to return an indictment in a drug case even though there was probable cause. Id. at 27. The real estate agent's responses established that he had serious concerns regarding the criminalization of drugs and could not be impartial with respect to these cases

That bias was the reason for the dismissal of the first two potential jurors is confirmed by the dismissal of a third potential juror. This juror stated that he had a strong bias for the Government. App. 1 to Gov't Response at 38. Judge Burns cautioned the juror that he should not "automatically defer to [the Government] or surrender the function and give the indictment decision to the U.S. Attorney. You have to make that independently." Id. at 40. Judge Burns emphasized once again the responsibility of the jurors to evaluate the facts of each case independently based on the evidence presented. Id. at 42-43. Demonstrating his even-handedness, Judge Burns explained, "I'm equally concerned with somebody who would say, 'I'm going to automatically drop the trap door on anybody the U.S. Attorney asks.' I wouldn't want you to do that." Id. at 44.

A reasonable grand juror would not have interpreted the dismissal of the first two potential jurors as a message that they must indict in all cases where probable cause is found or risk being excused from service. It was apparent to the other jurors that a lack of impartiality with respect to certain types of cases, *not* independence, was the reason for all three dismissals.

In sum, Judge Burns did not err in instructing the grand jurors that they were not to refuse to return an indictment on the ground that they disagreed with the laws. As the Ninth Circuit noted in Navarro-Vargas II, 408 F.3d at 1204, the grand jury's independence results from the secrecy of their deliberations and the unreviewability of their decisions. Nothing in the record shows any impediment to that independence.

**B.     Instructions re: Assistant U.S. Attorneys**

Defendant also contends that Judge Burns committed structural error by making comments about the Assistant U.S. Attorney's duty to present evidence that "cuts against the charge." According to Defendant, not only did Judge Burns' comments contradict United States v. Williams, 504 U.S. 36 (1992), but also discouraged independent investigation, leading to inaccurate probable cause determinations. Defendant reasons that given Judge Burns' comments, the grand jurors would have assumed that if the prosecutor did not present any exculpatory evidence, then none exists, rendering further investigation a waste of time. Again, this Court disagrees.

Under Williams, prosecutors do not have a duty to present substantial exculpatory evidence to the grand jury. Although Assistant U.S. Attorneys apparently have an employment duty to disclose "substantial evidence that directly negates the guilt" of a subject of investigation (United States Attorneys' Manual § 9-11.233), it does not appear that they have a broad duty to disclose all evidence that may be deemed exculpatory or adverse to the Government's position.

Accordingly, Judge Burns' comments regarding the duty of Assistant U.S. Attorneys to present adverse evidence were inaccurate. However, Judge Burns' comments do not rise to the level of structural error. As discussed above, Judge Burns stressed that the grand jury was independent of the Government. Judge Burns also explained to the jury that they could direct the Assistant U.S. Attorney to subpoena additional documents or witnesses. App. A to Def's Mot. at 11, 24. The jurors were also told about their right to pursue their own investigation, even if the Assistant U.S. Attorney disagrees with the grand jury's decision to pursue the subject. Id. at 12.

In light of the foregoing instructions, the Court does not agree that the grand jurors would assume that if the Government did not present any exculpatory evidence, none exists. A reasonable juror would understand that the Assistant U.S. Attorney may not be aware of certain exculpatory evidence, whether due to legitimate circumstances or inadequate investigation, and that further investigation by the grand jury may be needed to properly evaluate the evidence before them. Furthermore, Judge Burns told the jury that "in *most* instances" the U.S. Attorneys are duty-bound to present exculpatory evidence. Id. at 20 (emphasis added). Based on this qualifying language, the grand jurors would have understood that the prosecutor is not always bound to present exculpatory evidence. Thus, "the structural protections of the grand jury" have not "been so compromised as to render the proceedings fundamentally unfair." Bank of Nova Scotia v. United States, 487 U.S. 250, 257 (1988).

### IV. CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss the Indictment Due to Improper Grand Jury Instructions is **DENIED**.

**IT IS SO ORDERED.**

DATED: January 11, 2008

JOHN A. HOUSTON
United States District Judge