```
 1  KAREN P. HEWITT
    United States Attorney
 2  NICOLE ACTON JONES
    Assistant U.S. Attorney
 3  California State Bar No. 231929
    Federal Office Building
 4  880 Front Street, Room 6293
    San Diego, California  92101-8893
 5  Telephone: (619) 557-5482
    nicole.jones@usdoj.gov
 6
    Attorneys for Plaintiff
 7  United States of America
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RIGOBERTO HERNANDEZ-RIVERA, <br><br> Defendant. | Criminal Case No. 08CR0719-L <br><br> **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT** <br><br> **TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:  July 21, 2008 <br> Time:  2:00 p.m. <br> Court:  The Hon. M. James Lorenz |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Nicole Acton Jones, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's above-captioned motion. Said response is based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

//
//
//

I

**STATEMENT OF THE CASE**

On March 12, 2008, a federal grand jury in the Southern District of California returned a one-count Indictment charging defendant Rigoberto Hernandez-Rivera ("Defendant") with attempted illegal reentry after deportation, in violation of Title 8, United States Code, Section 1326. On March 13, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty.

II

**STATEMENT OF FACTS**

A.   **Defendant's Apprehension**

On January 24, 2008, at approximately 8:38 p.m., an individual named Oscar Medina-Castaneda drove a brown 1991 Ford Aerostar into the United States from Mexico through the San Ysidro Port of Entry. Defendant Rigoberto Hernandez-Rivera was one of eight illegal aliens discovered hidden in the rear cargo area of the Aerostar.

On January 25, 2008, at about 12:14 a.m., Defendant was advised of his Miranda rights in the Spanish language. Defendant elected to invoke his rights and all questioning ceased. Defendant then made a personal phone call to his "common law wife" Esther Garibay. Defendant advised Ms. Garibay that he had been caught at the border and that he was to be put in front of a judge.

B.   **Defendant's Criminal and Immigration History**

According to the police report, which is attached hereto as Exhibit 1, on July 4, 2003, Defendant agreed to give the victim a ride to a payphone, but instead took the victim to a dark street and, after the victim tried to escape, he told her he had a loaded gun and he raped her. After the rape, the victim ran down the street and flagged down a security guard. Defendant was uncooperative so the security guard handcuffed Defendant and called the police. When the police arrived, it was noted that Defendant did not have a shirt on, his belt was undone and his zipper was down.

Defendant initially stated that the victim had approached his truck and asked him for a ride. Defendant stated that he had refused to give the victim a ride and that she had never been in his truck. Defendant claimed that while they were talking, the victim suddenly ran to the security guard screaming about a gun. Upon further questioning, Defendant stated that the victim had sat in his truck when she

asked for a ride. Defendant then stated that he said he would give her a ride and then changed his mind. The victim's underwear was found on the passenger side floorboard of Defendant's truck.

The victim was examined by a nurse and the nurse determined that the victim's injuries were consistent with her statement regarding the details of the rape.

On July 7, 2005, Defendant was convicted after a jury trial of Attempted Sodomy with Force and Attempted Kidnaping. On November 15, 2005, Defendant was sentenced to 877 days (2 years, 4 months) jail and 3 years probation.

On January 23, 2008, an immigration judge ordered that Defendant be deported from the United States to Mexico and Defendant was physically removed that same day. The basis for the removal order was Defendant's crime of violence and moral turpitude, his alienage, and his lack of legal permission to enter or reside in the United States.

## III

## DEFENDANT'S MOTION

### A.   DEFENDANT'S DEPORTATION HEARING DID NOT VIOLATE DUE PROCESS, AND DEFENDANT CANNOT ESTABLISH PREJUDICE

Defendant moves to dismiss the Indictment, alleging a violation of due process at his removal hearing. Defendant argues that the immigration judge inadequately advised Defendant of his appeal rights. Defendant also asserts that the immigration judge failed to advise him that he was eligible for relief under 8 U.S.C. 1182(h), also known as Section 212(h) relief, and 8 U.S.C. §1229c(e), voluntary departure.

### 1.   Legal Standards

"Because the underlying removal order serves as a predicate element of an illegal entry offense under § 1326, a defendant charged with that offense may collaterally attack the removal order under the due process clause." United States v. Pallares-Galan, 359 F.3d 1088, 1095 (9th Cir. 2004); see also United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987). An alien must demonstrate three things before he or she can collaterally attack a prior removal: "(1) exhaustion of available administrative remedies to seek relief from the deportation order; (2) improper deprivation of an opportunity for judicial review; and (3) fundamental unfairness of the underlying removal order." United States v.

Camacho-Lopez, 450 F.3d 928, 930 (9th Cir 2006); see also 8 U.S.C. § 1326(d). A removal order is "fundamentally unfair" if (1) due process was violated by defects in the alien's removal hearing, and (2) the alien suffered prejudice as a result of the defects. United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir. 2004); see also Pallares-Galan, 359 F.3d at 1095. Prejudice can only be demonstrated if Defendant shows that he had plausible grounds for relief from deportation. United States v. Arce-Hernandez, 163 F.3d 559, 564 (9th Cir. 1998).

### 2.   Defendant Did Not Exhaust His Administrative Remedies

Defendant participated in his removal hearing on January 23, 2008, exactly one day before he was arrested illegally re-entering the United States in this case. Defendant had an individual removal hearing and was not removed as part of a group proceeding.[1] At the conclusion of Defendant's individualized hearing, the immigration judge asked Defendant if he wanted to appeal the removal order. Defendant initially indicated that he did not want to appeal now, but that he might want appeal later. The immigration judge explained that he needed to make the decision today and Defendant stated he did not want to appeal the order. This appellate waiver was considered and intelligent.

This is a classic case of failure to exhaust known remedies. See Noriega-Lopez v. Ashcroft, 335 F.3d 874, 879-80 (9th Cir. 2003) (where alien failed to challenge of sufficiency of proof of prior conviction on direct appeal, court would not consider it on collateral attack); United States v. Hinojosa-Perez, 206 F.3d 832, 836 (9th Cir. 2000) (holding that an alien who received notice of his right to file a motion to reopen immigration hearing and who failed to do so did not exhaust his administrative remedies); Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir. 1994) ("Failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter."). Rather than appealing the removal decision, Defendant chose to hire a smuggler to bring him across the international border in his illegal re-entry attempt. Defendant has not satisfied the first prong for a collateral attack: exhaustion of administrative remedies to seek relief from

---

[1]   Defendant has represented that a transcript of the deportation proceeding will be submitted to the Court prior to the hearing.

the deportation order. United States v. Muro-Inclan, 249 F.3d 1180, 1182 (9th Cir. 2001.) On this ground alone, Defendant's collateral attack on his deportation fails.

### 3. Defendant Was Not Eligible for a Voluntary Departure

Defendant argues that he was prejudiced by the deficiencies in his removal proceeding because he had a plausible ground for relief from deportation, namely, pre-conclusion voluntary departure under 8 U.S.C. § 1229c(a). [Motion at 4-11.] Despite the fact that voluntary departures are not available to aggravated felons, Defendant argues that because he committed his aggravated felony after entering the United States without inspection, he did not fall under Section 1229c(a)'s provision barring relief to aliens deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) (relating to conviction of an aggravated felony after admission). Defendant's same arguments were rejected by the Ninth Circuit in United States v. Ramirez-Lopez, 251 Fed.Appx. 390 (9th Cir. 2007) (unpublished).

#### a. The Statute Bars Relief to All Aggravated Felons

Defendant's contends that because Section 1229c incorporates 8 U.S.C. § 1227(a)(2)(A)(iii), only aliens who commit aggravated felonies after being "admitted" are barred from receiving a voluntary departure. Defendant's interpretation of what it means to incorporate 8 U.S.C. § 1227(a)(2)(A)(iii) was rejected in the analogous case United States v. Hernandez-Vermudez, 356 F. 3d 1011 (9th Cir. 2004). In Hernandez-Vermudez, the Court evaluated whether the reference in Section 1228(b)(1) to Section1227(a)(2)(A)(iii) (the same reference that appears in Section 1229c) limited expedited removal only to aggravated felon aliens who were "admitted." Id. at 1013. This Court rejected a reading of the statute that limited administrative removal of aggravated felon aliens to only those who were admitted and held that for purposes Section 1228(b) Congress intended that an alien who enters this country without inspection and an alien "admitted" to the United States are to be treated alike. In so ruling, the Court agreed with the Seventh Circuit that "the reference to § 1227(a)(2)(A)(iii) simply operates to incorporate the *definition of aggravated felony* set out in that section to elucidate which non-lawful resident aliens may be placed in expedited proceedings." Id. at 1014, quoting Baza Reyes v. INS, 256 F.3d 600, 605 (7th Cir. 2001) (emphasis added).

A similar reading should be applied in the context of 8 U.S.C. § 1229c(a). The interpretation suggested by Defendant would lead to an illogical result. Those aliens who committed a crime by

entering the United States would be afforded greater opportunities for relief from deportation than those who lawfully entered the country. Such an illogical result is not necessary and such a limitation should not be imposed in this case. Rather, the more reasonable interpretation is that the statute simply references the aggravated felony definition to delineate which aliens do not qualify for voluntary departures.

### b. The Agency Regulation Bars Relief to All Aggravated Felons

Moreover, and as Defendant admits, his reading of the statute is flatly inconsistent with the controlling regulations. According to the Code of Federal Regulations, an immigration judge may only exercise discretion to grant voluntary departure if the alien 1) requests voluntary departure at or before the time of the master calendar hearing, 2) makes no additional requests for relief, 3) concedes removability, 4) waives appeal of all issues, and 5) **has not been convicted of a crime described in section 101(a)(43) of the Act**. 8 C.F.R. § 1240.26 (emphasis added). Thus, despite Defendant's creative reading of the language of the statute, the agency regulation governing grants of voluntary departure expressly mandates that Defendant's convictions for attempted sodomy with force and attempted kidnaping, which are undisputed aggravated felonies, rendered him ineligible for voluntary departure. A government agency's regulations that have been published in the Code of Federal Regulations have the force and effect of law. See First Tennessee Bank Nat. Ass'n v. Barreto, 268 F.3d 319, 329 (6th Cir. 2001). See also Chief Probation Officers of California v. Shalala, 118 F.3d 1327, 1333 n.6 (9th Cir. 1997) (assuming that regulations published in the C.F.R. carry the force of law); Western Radio Services Co., Inc. v. Espy, 79 F.3d 896, 901 (9th Cir. 1986) (noting that regulations in agency manual did not have independent force and effect of law in part because they were not published in Code of Federal Regulations). See also Helliwell v. Haberman, 140 F.2d 833 (2d Cir. 1944) (definitions published in Code of Federal Regulations have the force of law as much "as though they were written in the statute").

Defendant argues that the above-cited regulation is due no deference because the plain language of the statute controls. [Motion at 5.] In Hernandez-Vermudez, however, the Ninth Circuit found that the incorporation of Section 1227(a)(2)(A)(iii) into another statute made that statute ambiguous. 356 F. 3d at 1013-14. The Court explained that because the statute was ambiguous, the Court must defer

to the Attorney General's interpretation as set forth in the applicable regulation. Accordingly, because the statutory language of Section 1229c is ambiguous, the Attorney General's valid regulation interpreting the statute controls here.

Even if the statute were not ambiguous and even if the statute did not bar relief for non-LPR aggravated felons, the agency narrowing regulation is perfectly valid. By its very terms, Section 1229c relief is *only* available at the Attorney General's discretion. Moreover, Section 1229c(e) provides that the Attorney General "may by regulation limit eligibility for voluntary departure under this section for any class or classes of aliens." In Ramirez-Lopez, the Ninth Circuit found that "Congress expressly authorized the Attorney General to exercise his discretion to determine who may be permitted to voluntarily depart, and sufficiently delineated the field within which the Attorney General is to exercise that discretion. Therefore, 8 U.S.C. § 1229c is a constitutional delegation of rulemaking authority." 251 Fed.Appx. at 391-92. Thus, even if the statute allowed voluntary departures for non-LPR aggravated felons (which it does not), the Attorney General was well within his right to issue a regulation limiting this purely discretionary relief to non-aggravated felons. Indeed, Congress underscored this point by specifically providing that "no court may review any regulation issued under [subsection 1229c]." 8 U.S.C. § 1229c(e).

Because Defendant was not eligible for a voluntary departure, the immigration judge did not err and Defendant's due process rights were not violated.

**4.   212(h) Does Not Provide Relief from Deportation for Defendant**

      a.   <u>Defendant Did Not Qualify for 212(h) Relief</u>

Defendant also contends that the immigration judge erred by not advising him that he might have been eligible for a waiver of admissibility and adjustment of status. 8 U.S.C. § 1182 (corresponding to INA section 212) addresses circumstances where an otherwise inadmissible alien may qualify for a waiver. Under Rule 212(h), a waiver of excludability will be granted where:

> (1) the alien is the spouse, parent or child of a citizen or lawful permanent resident; (2) the exclusion would result in extreme hardship to the citizen or lawful resident relative; (3) the alien's admission would not be contrary to the national welfare, safety or security of the United States; and (4) the Attorney General exercises [his] discretion in the alien's favor.

1 Arce-Hernandez, 163 F.3d at 563 (citing 8 U.S.C. § 1182(h)). Moreover, "in cases where individuals
2 have committed 'violent or dangerous crimes,' the Attorney General will not exercise his discretion to
3 grant waivers under 8 U.S.C. § 1182(h) (known as § 212(h) relief) unless the individual can show
4 'exceptional and extremely unusual hardship.'" Mejia v. Gonzales, 499 F.3d 991, 993 (9th Cir. 2007),
5 quoting 8 C.F.R. § 212.7(d).

6 Defendant claims that he qualified for Section 212(h) relief as the parent of United States citizen
7 children. [Motion at 13.] While this may be true (but is, at this point, unsupported), Defendant has not
8 explained how his deportation would have resulted in the necessary "exceptional and extremely unusual
9 hardship" to his sons. Instead, Defendant makes unsupported representations that the home he purchased
10 in October 2006 is at risk of foreclosure and a new truck he purchased was repossessed. [Motion at 13.]
11 While the loss of a home and a truck is certainly unfortunate, these events are a common result of
12 deportation and cannot be deemed "exceptional and extremely unusual."[2] This is especially true given
13 that in the current economy even citizens and legal residents are experiencing similar losses on a regular
14 basis. In any case, Defendant has not shown how either of these events has created an exceptional and
15 extremely unusual hardship *to his sons* – which is the only relevant inquiry.

16 The Ninth Circuit has held that the standard showing of "extreme hardship" (which is a lower
17 standard than what Defendant must show in this case) requires "great actual or prospective injury" or
18 "extreme impact" on the citizen family member, beyond the "common results of deportation." Arce-
19 Hernandez, 163 F.3d at 564 (citing Shooshtary v. I.N.S., 39 F.3d 1049 (9th Cir. 1994); see United States
20 v. Muro-Inclan, 249 F.3d 1180, 1184 (9th Cir. 2001). In Arce-Hernandez, 163 F.3d 559, 564, the court
21 held that:

22 > The allegation that the wife suffers from poor health and would have difficulty working in Mexico, if true, would constitute hardship to a wife and her children,

---

[2] Public property records indicate that the Defendant obtained loans equal to the full assessed value of the home, thus, it would appear he has little to no equity in the house. See Exh. 2. Defendant's last probation report, which was submitted about two weeks prior to his deportation, reveals that Defendant was working (illegally) 30 hours per week and earning $8 per hour. See Exh.3. Thus, it appears that he overextended himself by purchasing a house and a new truck and was likely at risk of losing both regardless of his deportation. The Government also notes that at least as of January 9, 2008, which was prior to his deportation, Defendant reported that he did not own any vehicles. Id.

> but we cannot say, as a matter of law, that these hardships would be extreme and beyond the common results of the deportation of a convict. Indeed, Arce-Hernandez describes the typical case of hardship that follows deportation of an alien whose citizen wife and children were all acquired after his illegal entry into the United States.

In <u>Muro-Inclan</u>, 249 F.3d at 1185, the Court also held that the hardships alleged by the appellant represented the common results of deportation and did not represent the type of additional evidence of extreme hardship beyond the normal deprivation of family support. Specifically, the Court noted that:

> Here, the only evidence submitted to show hardship is a brief, generalized declaration from Appellant's wife, who states that she needs his 'help in raising children and providing for them. I cannot provide everything they need without their father's help.' However, the record discloses that Appellant has been incarcerated for 10 out of the last 13 years.

<u>Id</u>. Finally, in <u>Shooshtary</u>, 39 F.3d at 1051, the Court found that no evidence was presented of extreme hardship "other than generalities about having to move his family elsewhere, anticipated difficulties in finding work, and anticipated loss of friends. Such generalities are, of course, present when one moves to a new location." The Court specifically held that "generalities" set forth as evidence instead of "preciseness of proof" do not "meet the burden required to show extreme hardship." <u>Id.</u>

In <u>Mejia</u>, 499 F.3d at 994, the Ninth Circuit addressed the "high burden" of showing "exceptional and extremely unusual hardship" for aliens who have committed violent or dangerous crimes. In that case, the alien, who was convicted of sexual abuse of a minor, was married to a U.S. citizen and had two U.S. citizen children, all of whom testified at the immigration hearing. The immigration judge denied Section 212(h) relief finding that the seriousness of the crime was "virtually inexcusable." <u>Id.</u> at 994. The immigration judge also noted that other factors also weighed against granting relief, including the fact that the alien had denied his crime when confronted (though, unlike Defendant here, the alien did eventually plead guilty) and the victim did not testify on his behalf at the hearing. The Ninth Circuit affirmed. Like the alien in <u>Mejia</u>, Defendant committed a violent sexual crime, he failed to accept responsibility for his actions, and the victim has not offered to provide testimony on his behalf.

In this case, Defendant has not shown that his deportation has or will cause "exceptional and extremely unusual hardship" to his sons. To the contrary, Defendant's complaints are the typical result of deportation. Therefore, he does not meet the requirements of 212(h) relief.

          b.      <u>Defendant was not eligible for adjustment of status</u>

Even if Defendant could establish "exceptional and extremely unusual hardship" such that he qualified for a Section 212(h) waiver of inadmissibility, Defendant would still need to establish he was eligible for adjustment of status. To show eligibility for adjustment of status, Defendant must show that he met the requirements of the applicable statute, INA § 245(a), codified at 8 U.S.C. § 1255(a). For Section 245 relief of adjustment of status, three conditions must be met: "(1) the alien applies for such adjustment, (2) he is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a). Defendant did not meet any of these conditions at the time he was deported.

During the removal hearing, the immigration judge asked Defendant whether his parents or close family members were citizens of the United States. Defendant responded that his grandmother had a visa, but that he had no other relatives with status. The immigration judge offered to extend Defendant additional time to inquire of his relatives, but Defendant declined. Accordingly, Defendant was not eligible for a family-sponsored visa. Instead, Defendant makes the unsupported claim that had he been advised of Section 212(h) relief, he would have married his United States citizen girlfriend and then she would have petitioned for him to receive a visa. [Motion at 13.] This claim is suspect considering that Defendant and his girlfriend had not married in the three years they allegedly dated prior to the initiation of deportation proceedings. According to Defendant's analysis, in addition to inquiring about the citizenship of Defendant's family, the immigration judge was required to ask him (1) if he had a U.S. citizen girlfriend and (2) if could marry his girlfriend and, if he answered affirmatively, the judge would also have been required to stay the deportation proceedings to allow the marriage and visa application to be accomplished. Defendant, however, cites no authority to support his claim that immigration judges are required to inquire about potential marriage opportunities. In fact, such a procedure would violate the policy of prohibiting adjustment of status based upon marriages entered into during removal

1  proceedings for the purpose of avoiding removal. See 8 U.S.C. §§ 1254(g), 1255(e); 8 C.F.R. § 245.1(c)(8).[3]

Defendant has not demonstrated that the immigration judge erred by failing to advise him of possible relief because there were no facts in the record before the immigration judge from which an inference could have been made that Defendant was entitled to such a waiver. As a result, he cannot now claim that the immigration judge violated his due process rights. See United States v. San Juan Cruz, 314 F.3d 384, 390 (9th Cir. 2002) (finding no prejudice under Section 1326(d) because defendant was ineligible to adjust immigration status because no visa was immediately available to him); see also United States v. Gonzalez-Valerio, 342 F.3d 1051, 1056 (reversing district court dismissal of 8 U.S.C. § 1326 indictment due to allegedly invalid deportation because Defendant was barred from relief and

In conclusion, Defendant's challenges based on Section 212(h) must fail for two reasons: (1) Defendant cannot meet the prejudice requirement because he cannot show that at the time of his hearing his deportation would have caused "exceptional and extremely unusual hardship" to his sons; and (2) Defendant could not meet all the requirements set out in Section 245 of the INA, 8 U.S.C. § 1255 for adjustment of status. For those reasons, Defendant's motion predicated on Section 212(h) must be denied.

//
//
//
//

---

[3] Defendant cites United States v. Flores-Rodriguez, 236 Fed. Appx. 338 (9th Cir. 2007) to support his contention that he had a "plausible" chance of being granted an adjustment of status based on his girlfriend. [Motion at 13.] A reading of Judge Tallman's dissent, however, reveals that the defendant in Flores-Rodriguez also raised the "I might have married my girlfriend" claim to relief, but the majority remanded the case for the sole purpose of having the district court determine whether the defendant could have received an immediate relative visa through his *mother*. Id. at 341-342. Indeed, in an earlier unpublished decision a panel of the Ninth Circuit rejected the exact same argument Defendant is making here. See United States v. Ramirez, 145 Fed. Appx. 600, 602-03 (9th Cir. 2005) (unpublished).

## IV
## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that Defendant's motion be denied.

Date: July 14, 2008                              s/Nicole Acton Jones
                                                 NICOLE ACTON JONES
                                                 Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>RIGOBERTO HERNANDEZ-RIVERA,<br><br>　　　　　Defendant. | Case No. 08CR0719-L<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

　　　I, Nicole Acton Jones, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

　　　I am not a party to the above-entitled action. I have caused service of RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

**Jennifer Coon, Federal Defenders**

　　　I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

　　　None.

the last known address, at which place there is delivery service of mail from the United States Postal Service.

　　　I declare under penalty of perjury that the foregoing is true and correct.

　　　Executed on July 14, 2008

　　　　　　　　　　　　　　　　　　　/s Nicole Acton Jones
　　　　　　　　　　　　　　　　　　　NICOLE ACTON JONES