KAREN P. HEWITT
United States Attorney
NICOLE ACTON JONES
Assistant U.S. Attorney
California State Bar No. 231929
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5482; Facsimile: (619) 235-2757
Nicole.Jones@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RIGOBERTO HERNANDEZ-RIVERA, ) <br> ) <br> Defendant. ) <br> ) <br> ) <br> ) | Criminal Case No. 08CR0719-L <br><br> DATE:  August 25, 2008 <br> TIME:   10:00 a.m. <br> Before Honorable M. James Lorenz <br><br> STATEMENT OF FACTS AND <br> MEMORANDUM OF POINTS AND <br> AUTHORITIES IN SUPPORT OF MOTIONS <br> *IN LIMINE* |

**I**

**STATEMENT OF THE CASE**

On March 12, 2008, a federal grand jury in the Southern District of California returned a one-count Indictment charging defendant Rigoberto Hernandez-Rivera ("Defendant") with attempted illegal reentry after deportation, in violation of Title 8, United States Code, Section 1326. On March 13, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty.

On April 1, 2008, Defendant filed motions to dismiss the indictment, strike surplusage, produce grand jury transcripts, and to compel discovery. On April 7, 2008, the Government filed a motion for fingerprint exemplars and reciprocal discovery. At the motion hearing on June 2, 2008, the Court denied each of Defendant's motions. On June 23, 2008, Defendant filed a motion to dismiss the indictment due to an invalid deportation. This motion is to be heard on August 25, 2008, which is also the date for hearing any motions *in limine*. The case is set for trial on September 3, 2008.

## II

## **STATEMENT OF FACTS**

**A.    Defendant's Apprehension**

On January 24, 2008, at approximately 8:38 p.m., an individual named Oscar Medina-Castaneda, aka Francisco Sauceda-Obeso, drove a brown 1991 Ford Aerostar into the United States from Mexico through the San Ysidro Port of Entry. Defendant Rigoberto Hernandez-Rivera was one of eight illegal aliens discovered hidden in the rear cargo area of the Aerostar.

On January 25, 2008, at about 12:14 a.m., Defendant was advised of his Miranda rights in the Spanish language. Defendant elected to invoke his rights and all questioning ceased. Defendant then made a personal phone call to his "common law wife" Esther Garibay. Defendant advised Ms. Garibay that he had been caught at the border and that he was to be put in front of a judge.

**B.    Defendant's Criminal and Immigration History**

According to the police report, on July 4, 2003, Defendant agreed to give the victim a ride to a payphone, but instead took the victim to a dark street and, after the victim tried to escape, he told her he had a loaded gun and he raped her. After the rape, the victim ran down the street and flagged down a security guard. Defendant was uncooperative so the security guard handcuffed Defendant and called the police. When the police arrived, it was noted that Defendant did not have a shirt on, his belt was undone and his zipper was down.

Defendant initially stated that the victim had approached his truck and asked him for a ride. Defendant stated that he had refused to give the victim a ride and that she had never been in his truck. Defendant claimed that while they were talking, the victim suddenly ran to the security guard screaming about a gun. Upon further questioning, Defendant stated that the victim had sat in his truck when she asked for a ride. Defendant then stated that he said he would give her a ride and then changed his mind. The victim's underwear was found on the passenger side floorboard of Defendant's truck.

The victim was examined by a nurse and the nurse determined that the victim's injuries were consistent with her statement regarding the details of the rape.

On July 7, 2005, Defendant was convicted after a jury trial of Attempted Sodomy with Force and Attempted Kidnaping. On November 15, 2005, Defendant was sentenced to 877 days (2 years, 4 months) jail and 3 years probation.

On January 23, 2008, an immigration judge ordered that Defendant be deported from the United States to Mexico and Defendant was physically removed that same day. The basis for the removal order was Defendant's crime of violence and moral turpitude, his alienage, and his lack of legal permission to enter or reside in the United States.

## III

## MOTIONS *IN LIMINE*

**A.   THE COURT SHOULD ADMIT A-FILE DOCUMENTS AND TESTIMONY**

1.   A-File Documents are Admissible as Public Records or Business Records

The United States intends to offer documents maintained by the former Immigration and Nationalization Service and current Department of Homeland Security ("DHS") regarding Defendant. The agency maintains an "A-file" on Defendant, which contains documents reflecting Defendant's immigration encounters. The United States moves to introduce "A File" documents to establish Defendant's alienage, prior deportations, and that he was subsequently found in the United States without having sought or obtained authorization from the Attorney General. The documents are self-authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records." Fed. R. Evid. 803(6).

The Ninth Circuit has addressed the admissibility of A-File documents in United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997). There, Loyola-Dominguez appealed his § 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from the illegal immigrant's "A File." Id. at 1317. The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation. Loyola-Dominguez argued that admission of the documents violated the rule against hearsay and denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected his arguments, holding that the documents were properly admitted as public records. Id. at 1318. The court first noted that documents from a defendant's immigration file, although "made by law

1  enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the
2  concerns animating the law enforcement exception to the public records exception." <u>Id.</u> (quoting <u>United
3  States v. Hernandez-Rojas</u>, 617 F.2d 533, 534-35 (9th Cir. 1980)).  The court also held that such
4  documents are self-authenticating and, therefore, do not require an independent foundation.  <u>Id.</u>

5     <u>Loyola-Dominguez</u> is simply among the more recent restatements of the public records and
6  business records rules.  Courts in this Circuit have consistently held that documents from a defendant's
7  immigration file are admissible in a § 1326 prosecution to establish the defendant's alienage, prior
8  deportation and lack of permission to re-enter the United States.  <u>See</u> <u>United States v. Mateo-Mendez</u>,
9  215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence as
10 absence of a public record); <u>United States v. Sotelo</u>, 109 F.3d 1446, 1449 (9th Cir. 1997) (holding
11 warrant of deportation admissible to prove alienage); <u>United States v. Contreras</u>, 63 F.3d 852, 857 (9th
12 Cir. 1995) (district court properly admitted warrant of deportation as public record); <u>United States v.
13 Hernandez-Rojas</u>, 617 F.2d at 535 (district court properly admitted warrant of deportation as public
14 record).

15     2.   <u>A Certificate of Non-Existence Is Admissible</u>

16    The United States moves to introduce a Certificate of Non-existence of Record ("CNR"),
17 prepared by an authorized official at the Department of Homeland Security and certifying that there are
18 no records in any of the Department's databases, files, or archives that Defendant has ever applied for,
19 or been granted, permission to reenter the United States following his deportation.  The Ninth Circuit
20 has held that a CNR is not "testimonial" within the meaning of <u>Crawford v. Washington</u>, 541 U.S. 36
21 (2004) and therefore that its admission into evidence does not violate the Confrontation Clause of the
22 United States Constitution.  <u>See</u> <u>United States v. Cervantes-Flores</u>, 421 F.3d 825, 831-33 (9th Cir. 2005).
23 The CNR has been requested and will be produced in discovery as soon as it has been received.

24 **B.   THE COURT SHOULD PROHIBIT COLLATERAL ATTACK OF DEFENDANT'S
       PRIOR DEPORTATION**
25
26    The lawfulness of a prior deportation is not an element of the crime of illegal re-entry of an alien
27 following deportation, exclusion or removal.  In <u>United States v. Mendoza-Lopez</u>, 481 U.S. 828, 834-35
28 (1987), the Supreme Court held that the lawfulness of a prior deportation order is not an element of the

1  offense: "The language of the statute, however, suggests no such limitation [proof of a lawful order of deportation], stating simply that 'any alien who has been arrested and deported or excluded and deported,' 8 U. S. C. § 1326 (1), will be guilty of a felony if the alien thereafter enters, attempts to enter, or is at any time found in, the United States, 8 U. S. C. § 1326 (2)." In 1996, Congress codified the Mendoza-Lopez decision, and its progeny, in 8 U.S.C. § 1326(d), entitled "Limitation on collateral attack on underlying deportation order." That statute provides a three-step process for collaterally challenging an underlying deportation proceeding. If the deportation order is successfully challenged collaterally it cannot be used to establish prior deportation.

The Ninth Circuit expressly held in United States v. Alvarado-Delgado, 98 F.3d 492 (9th Cir. 1996) (en banc), that "the lawfulness of [a] prior deportation is not an element of the offense under § 1326" and that, accordingly, an alien charged under § 1326 is "not entitled to have the issue determined by a jury." Id. at 493. If Defendant does not successfully complete the three-step process under 8 U.S.C. § 1326(d) to successfully attack his order of deportation, this Court should refuse to submit the lawfulness of Defendant's underlying deportation to the jury.

**C.   THE COURT SHOULD ADMIT DEFENDANT'S PRIOR STATEMENTS**

   1.   Defendant's Admissions During His Deportation Proceeding Are Admissible

Defendant appeared before an immigration judge for a deportation hearing on January 23, 2008 (exactly one day before he committed the instant offense). The deportation hearing was recorded and the audio tape was produced in discovery on May 22, 2008. During the course of this deportation hearing, Defendant made admissions regarding his citizenship, specifically, Defendant admitted that he is a citizen of Mexico, he is not a citizen of the United States, and he did not have documents allowing him to be in the United States legally. Defendant's statements are admissible as admissions by a party opponent and are relevant because they tend to prove an element of the charged crime, namely, his alienage. See Fed. R. Evid. 401. The admissions are of particular relevance in this case because the hearing occurred one day before Defendant was caught attempting to sneak into the United States in the back of a van. Absent a stipulation, the United States seeks to have a redacted portion of a transcript of the proceeding read into the record or a redacted portion of the recording played for the jury as part of its case-in-chief.

1  Further, a Government witness will testify that these tapes are regularly compiled at immigration
2  hearings, which are civil proceedings involving the Government. The statements are admissible as
3  records of regularly conducted activity, Fed. R. Evid. 803(6), and public records, Fed. R. Evid. 803(8).
4  Both Rule 803(6) and 803(8) allow the admission of data compilations in any form, including tapes.
5  Moreover, the Ninth Circuit has affirmed the admission of such tapes under these evidentiary theories
6  in criminal cases before. See United States v. Johnson, 297 F.3d 845 862-863 (9th Cir. 2002).

7  In addition, Defendant should be precluded from arguing or implying to the jury that the
8  redactions mean the Government is "hiding" evidence from the jury. Such argument or implication is
9  improper and has no basis in fact. The redactions are for the benefit of Defendant – without the
10 redactions the jury would hear that Defendant has a prior conviction for Attempted Sodomy with Force
11 and Attempted Kidnaping. Accordingly, Defendant should be precluded from making this improper,
12 unsubstantiated argument to the jury.

13       2.    Statements Made to Agent Velarde on January 9, 2008 Are Admissible

14 On January 9, 2008, Border Patrol Agent Velarde interviewed Defendant at the San Jacinto
15 Probation Office. The purpose of the interview was to determine if Defendant was subject to
16 deportation. During the interview, Defendant stated that he illegally entered the United States in 1988.
17 Defendant admitted that he is a citizen of Mexico by birth and that he has no documents allowing him
18 to be in the United States legally. Subsequent to this interview, Defendant was placed in deportation
19 proceedings and was ordered deported by an immigration judge. This statement and the surrounding
20 circumstances were disclosed to Defendant in the initial discovery on February 4, 2008.

21 Defendant's prior statements are admissible as admissions of a party opponent and are relevant
22 to the element of alienage. See Fed. R. Evid. 801(d)(2), 401. Defendant was not read his Miranda
23 rights prior to this interview, but this is because Defendant was not in custody at the time of the
24 interview. Even if the Court were to determine that Defendant was in custody, his statements are still
25 admissible. In United States v. Salgado, 292 F.3d 1169 (9th Cir. 2002), the Ninth Circuit was faced with
26 almost identical facts (except that the interview took place in jail) and determined that an immigration
27 interview conducted "solely for the administrative purpose of determining whether [a person] was
28 deportable" is not the type of interrogation that requires Miranda warnings. Id. at 1172-73.

1    At the time Defendant was interviewed, he was on probation for a non-immigration offense. At
2 the time of the interview Defendant, like the defendant in Salgado, had never been deported from the
3 United States and therefore was not subject to a Section 1326 prosecution. The purpose of Agent
4 Velarde's interview was simply to determine whether Defendant was deportable, which he was. Like
5 the agent in Salgado, Agent Velarde had no way of knowing that Defendant would be deported, would
6 reenter the United States illegally and would be arrested. Thus, Agent Velarde could not have known
7 that the questions he asked Defendant on January 9, 2008 would be reasonably likely to incriminate him.
8 Id. at 1172-73. As the Court explained in Salgado, the answers Defendant gave during the immigration
9 interview are admissible for the same reasons that Defendant's answers from his deportation hearing are
10 admissible, namely, Miranda warnings are not required in the context of civil deportation proceedings.
11 Id. at 1173, citing United States v. Solano-Godines, 120 F.3d 957, 961 (9th Cir. 1997). Accordingly,
12 Defendant's statements to Agent Velarde are admissible.

13    3.    Statements Made During a Post-Arrest Phone Call Are Admissible

14    After his arrest, Defendant was properly advised of his Miranda rights and he elected to invoke
15 his rights. Defendant also elected to make a phone call to his girlfriend Esther Garibay. This call was
16 made in the presence of CBP Officer Mario Avila, who overheard Defendant's side of the conversation.
17 Specifically, the officer heard Defendant tell Ms. Garibay that he had been caught at the border and that
18 he was going to be put in front of a judge. This statement and the surrounding circumstances were
19 disclosed to Defendant in the initial discovery on February 4, 2008.
20    The Government intends to introduce Defendant's statement to Ms. Garibay in its case-in-chief.
21 The statement is admissible as an admission by a party-opponent under Rule 801(d)(2). The statement
22 is relevant because the statement supports that Defendant knowingly and intentionally attempted to enter
23 the United States and was calling his girlfriend to tell her that he had gotten caught. The statement is
24 voluntary because Defendant himself elected to make the phone call even though he knew he was in the
25 presence of law enforcement officers. Accordingly, the statements should be admitted.

26 **D.    THE COURT SHOULD ADMIT 609 EVIDENCE**

27    In a letter dated August 6, 2008, the United States notified Defendant of its intent to use
28 Defendant's 2005 felony conviction for Attempted Sodomy with Force and Attempted Kidnaping for

7

impeachment purposes under Rule 609. Given the nature of Defendant's prior crime, the Government will seek only to offer evidence of the date and the fact of Defendant's felony conviction. The Government will not seek to offer the nature of the conviction.

Federal Rule of Evidence 609(a) provides in pertinent part:

> For purposes of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, <u>and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused</u>; and (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

Fed. R. Evid. 609(a) (emphasis added).

The Ninth Circuit has set forth five factors that the district court should balance in making the determination required by Rule 609. <u>United States v. Browne</u>, 829 F.2d 760, 762-63 (9th Cir. 1987). Specifically, the court must consider: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility. <u>Id.</u> at 762-63. <u>See also</u> <u>United States v. Hursh</u>, 217 F.3d 761 (9th Cir. 2000).

The five <u>Browne</u> factors weigh heavily in favor of admissibility with regard to this conviction. First, the impeachment value of Defendant's felony conviction is high because such a serious conviction shows a significant disregard for the laws of the United States. As Rule 609 recognizes, convictions for serious felonies cast doubt on a defendant's honesty, and therefore have significant impeachment value. Second, the 2005 conviction occurred well within the last ten years. Third, the conviction is not at all similar to the current charge, but in any case the Government will not inquire as to the nature of the conviction. Fourth, the importance of Defendant's testimony is crucial in a case such as this, where Defendant would presumably be called to testify only if he intended to claim that he did not have the conscious desire to enter the United States, was a citizen or had received the permission of the United States Attorney General to enter the country. Finally, because such defenses could only plausibly be developed through the Defendant's own testimony, his credibility in asserting such alleged facts would

be central to the case. The Government also notes that while the possibility for prejudice is low, whatever risk of unfair prejudice that exists can be adequately addressed by means of an appropriate limiting instruction.

Accordingly, the Government should be allowed to introduce evidence of Defendant's prior felony conviction under Rule 609(a) if he elects to testify at trial.

### E.   THE COURT SHOULD ADMIT EXPERT TESTIMONY BY THE GOVERNMENT

At trial, the Government intends to offer testimony of its fingerprint analyst, Lisa DiMeo, to identify Defendant as the person who was previously deported. Defendant was notified of the United States's intention to use a fingerprint expert in the Government's April 7, 2008 motion requesting fingerprint exemplars, as well as by a letter dated August 6, 2008. The Defendant is scheduled to provide fingerprint exemplars on August 13, 2008, and the Government will produce the expert's report as soon as it has been prepared.

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the sound discretion of the trial judge. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704.

The Government anticipates that the fingerprint expert will testify that based upon fingerprint comparisons, Defendant was the same person deported on January 23, 2008, and who was found in the United States on January 24, 2008. This testimony should be admitted under Rules 702 and 703.

### F.   THE COURT SHOULD PRECLUDE ANY DEFENSE EXPERT TESTIMONY

In its motion for reciprocal discovery, the United States requested permission to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or

control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial. Defendant has provided neither notice of any expert witness, nor any reports by expert witnesses. Accordingly, Defendant should not be permitted to introduce any expert testimony.

### G.     THE COURT SHOULD EXCLUDE WITNESSES EXCEPT THE CASE AGENT

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. The United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

### IV

### UNITED STATES' RENEWED MOTION FOR RECIPROCAL DISCOVERY

As of the date of these motions, Defendant has produced no reciprocal discovery. The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of all witnesses, except for those of Defendant. Defendant has not provided the United States with any documents or statements. Accordingly, the United States intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

//
//
//
//
//
//
//
//
//
//

# V

# **CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court grant its motions *in limine*.

DATED: August 11, 2008.

                                            Respectfully submitted,

                                            Karen P. Hewitt
                                            United States Attorney

                                            s/ *Nicole Acton Jones*
                                            NICOLE ACTON JONES
                                            Assistant U.S. Attorney

|   |   |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | SOUTHERN DISTRICT OF CALIFORNIA |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0719-L |
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| RIGOBERTO HERNANDEZ-RIVERA, | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, NICOLE ACTON JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S MOTIONS *IN LIMINE*** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Jennifer Coon

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 11, 2008.

/s/ *Nicole Acton Jones*
NICOLE ACTON JONES

12